UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-14046-CR-MOORE/LYNCH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

HERID BETANCOURT,

    Defendant.
_____/

FILED by ___ D.C.

MAR 2 8 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

REPORT AND RECOMMENDATION ON DEFENDANT'S ADMISSIONS
TO VIOLATIONS NUMBERS 1, 3 AND 4 OF THE AMENDED PETITION
ALLEGING VIOLATIONS OF SUPERVISED RELEASE AND ON
FINAL EVIDENTIARY HEARING IN RESPECT TO VIOLATIONS
NUMBERS 5 AND 6 OF THE AMENDED PETITION ALLEGING
<u>VIOLATIONS OF SUPERVISED RELEASE</u>

**THIS CAUSE** having come on to be heard for a final evidentiary hearing on March 28, 2013 in respect to the pending Amended Petition Alleging Violations of Supervised Release and the Defendant having admitted Violations Numbers 1, 3 and 4 of the Amended Petition, the government dismissing Violation Number 2 of the Amended Petition, and this Court having proceeded with a final evidentiary hearing in respect to Violations Numbers 5 and 6, recommends to the District Court as follows:

    1.    The Defendant is charged with violations of supervised release as set forth in the Amended Petition dated March 27, 2013. At the outset of this hearing, the Court read each of the six violations to the Defendant as they are now set forth in the Amended Petition. The Defendant responded to the Court that he understood the violations pending against him and also understood the possible maximum penalties he is facing based upon

those penalties having been announced on the record by the government subsequent to this Court reading the violations to the Defendant.

2. The Amended Petition alleges the following six violations:

**Violation Number 1**     **Violation of Standard Condition**, by leaving the judicial district without first securing permission of the probation officer. On or before November 5, 2012, the defendant traveled to Freeport Bahamas, without securing the permission of the probation officer or the Court, as evidenced by U.S. Department of Homeland Security Record of Deportable/Inadmissible Alien dated November 6, 2012.

**Violation Number 2**     **Violation of Standard Condition**, by leaving the judicial district without first securing permission of the probation officer. On or about November 6, 2012, the defendant traveled to Miami, Florida without securing the permission of the probation officer or the Court, as evidenced by U.S. Department of Homeland Security Record of Deportable/Inadmissible Alien dated November 6, 2012.

**Violation Number 3**     **Violation of Mandatory Condition**, by unlawfully possessing or using a controlled substance. On or about September 10, 2012, the defendant submitted a urine specimen which tested positive for the presence of cocaine and marijuana and was confirmed positive by the Middle District of Florida Regional Drug Testing Laboratory.

**Violation Number 4**     **Violation of Mandatory Condition**, by unlawfully possessing or using a controlled substance. On or about September 19, 2012, the defendant submitted a urine specimen which tested positive for the presence of marijuana and was confirmed positive by the Middle District of Florida Regional Drug Testing Laboratory.

| | |
|---|---|
| **Violation Number 5** | **Violation of Mandatory Condition**, by failing to refrain from a violation of the law. On or about November 6, 2012, in Palm Beach County, Florida, the defendant committed the offense of attempted illegal reentry of a removed alien, in violation of 8 U.S.C. § 1326(b)(2). |
| **Violation Number 6** | **Violation of Special Condition**, by reentering the United States without the prior written permission of the Undersecretary for Border and Transportation Security, and by failing to report to nearest U.S. Probation Office within seventy-two (72) hours of his arrival. On or about November 6, 2012, the defendant reentered the United States without the written permission of the Attorney General as evidenced by his detention on November 6, 2012. |

3. At the outset of the final evidentiary hearing, counsel for the Defendant advised the Court that the Defendant intends to admit Violations Numbers 1, 3 and 4 of the Amended Petition. The Defendant continued to deny Violations Numbers 5 and 6. This Court conducted an evidentiary hearing as to those two violations and will set forth separately herein its Report and Recommendation in respect to the evidence received at that final evidentiary hearing. Finally, the government announced that it would not be proceeding in respect to Violation Number 2 and requested that violation be dismissed on the record.

---

### Final Evidentiary Hearing in respect to Violations Numbers 5 and 6 of the Amended Petition.

4. This Court had previously continued to March 28, 2013 the preliminary hearing and final evidentiary hearing in respect to the original Petition. The Court

announced that it would consider all of the evidence at the March 28, 2013 hearing as the final evidentiary hearing in this matter. Counsel for the government and counsel for the Defendant had no objection to this Court proceeding directly into the final hearing on the disputed Violations Numbers 5 and 6 of the Amended Petition. In that respect, the government called as its sole witness Officer Alexis Mederos of the United States Border Patrol.

5. Officer Mederos testified that on November 6, 2012 he came into contact with this Defendant, who he identified in open court at this hearing. The Defendant had been on a boat in the Atlantic Ocean which had become inoperable approximately 23 miles east of the United States coast adjacent to Palm Beach County, Florida. United States law enforcement authorities were dispatched to assist the Defendant's vessel which was in distress and began towing it back to Riviera Beach, Florida.

6. Officer Mederos spoke with the Defendant first on the dock after his vessel was towed there. The Defendant was read his <u>Miranda</u> warnings in Spanish by Officer Mederos after the Defendant was taken to the Border Patrol offices in Riviera Beach. The Defendant stated that he understood his <u>Miranda</u> rights and agreed to make a statement to Officer Mederos.

7. The Defendant stated that his boat had broken down after he left a marina in West Palm Beach. He was not able to name the marina. He was just "trying the boat out" and was not intending on leaving the United States. The vessel became inoperable and he was thereafter towed back into the United States as referenced above.

8. Officer Mederos testified that Customs and Border Patrol aircraft had first observed the Defendant's vessel leaving the Bahamas and followed it back towards the

4

United States when the Defendant's vessel became inoperable. When Officer Mederos told the Defendant this, the Defendant denied that he had gone to the Bahamas. The Defendant stated that he had been drifting in his vessel for a long time.

9.    Officer Mederos obtained the Defendant's A-file from the immigration authorities. Contained within that file is an Order of Removal, which was admitted as Government's Exhibit No. 1 at this hearing. That Order of Removal is dated November 30, 2010 and signed by James Nugent, Immigration Judge. That Order of Removal reflects that the Defendant is a Cuban National and that the Defendant was ordered to be removed as of that date.

10.   The record reflects that the Defendant, being a Cuban National, is not presently subject to actually being physically deported to his native country of Cuba based upon the present state of the United States immigration laws in respect to Cuban Nationals who actually make it physically into the United States. Therefore, the Defendant had been residing in the United States as a permanent resident alien prior to entry of the removal order in November of 2010. That removal order was occasioned by the Defendant's conviction in this case wherein he was convicted of conspiracy to smuggle aliens into the United States and received a sentence of 18 months in the United States Bureau of Prisons on or about March 1, 2010. A copy of the Judgment and Conviction in this case has been admitted into evidence as Government's Exhibit No. 2 for this hearing.

11.   Judge Moore's Judgment and Conviction in this case has a "Special Conditions of Supervision" contained on page 4 of that document, Government's Exhibit No. 2. That special condition required the Defendant, upon completion of his term of imprisonment, to be surrendered to the custody of the U. S. Immigration and Customs

Enforcement for removal proceedings consistent with the Immigration and Nationality Act. Further, Judge Moore's Judgment and Conviction states that if the Defendant is removed, he shall not re-enter the United States without prior written permission of the Undersecretary for Border and Transportation Security. Further, the Defendant's supervised release set forth in Judge Moore's Judgment and Conviction reflects that it shall be "non-reporting while the defendant is residing outside the United States." Further, the Judgment and Conviction states that if the Defendant reenters the United States within the term of supervised release, the Defendant is to report to the nearest U.S. Probation Office within 72 hours of the Defendant's arrival.

12. The aforementioned removal order was found by Officer Mederos within the Defendant's immigration file. Further, Officer Mederos could not find any written permission for the Defendant to re-enter the United States after he had voluntarily exited the United States.

13. On cross-examination, Officer Mederos admitted that the Defendant had been released, subsequent to the Order of Removal being entered, and was subject to an "Order of Supervision" dated June 10, 2011. A copy of this Order was admitted into evidence at this hearing as Defendant's Exhibit No. 1.

14. The Order of Supervision issued by the U. S. Immigration and Customs Enforcement Agency (ICE) sets forth various conditions whereby the Defendant was released from custody subsequent to Judge Nugent's Order of Removal. One of those provisions directs the Defendant to not travel outside Florida for more than 48 hours without first having notified U.S. Immigration and Customs Enforcement of the dates and places of such proposed travel. This has become an issue of contention in respect to

Violations Numbers 5 and 6 of the Amended Petition. This Court will review the Defendant's arguments in that regard later herein.

15. Officer Mederos admitted that the Defendant had not yet been physically deported and removed from the United States since he is a Cuban National.

16. The Defendant presented no witnesses or evidence at the final evidentiary hearing in respect to Violations Numbers 5 and 6 of the Amended Petition. However, the Defendant argued that he has never been "removed" from the United States since he is a Cuban National and the present immigration policy of this country does not permit the physical deportation of such aliens to Cuba whether or not there has been a removal order entered or not.

17. Further, counsel for the Defendant argues that the U. S. Immigration and Customs Enforcement agency did not place any restrictions on the Defendant leaving the State of Florida as long as it was not for more than 48 hours. Counsel for the Defendant refers to Defendant's Exhibit No. 1, being the Order of Supervision dated June 10, 2011 under which the Defendant was released from immigration custody subsequent to the November 2010 Order of Removal by Judge Nugent. This Court points out for the record however, that at the same time that the Defendant was subject to the U. S. Immigration and Customs Enforcement Order of Supervision, he was still subject to Judge Moore's Judgment and Conviction in this case which this Court finds is not superseded by the Order of Supervision issued by ICE.

18. The Defendant further argues that he had every right to leave Florida on the vessel without notifying ICE or his Probation Officer since his trip did not last longer than 48 hours. There is no evidence as to when the Defendant left on the vessel and how long he was outside of the State of Florida.

19. In respect to Violation Number 6, counsel for the Defendant argues that he was not restricted in leaving the United States under the Order of Supervision issued by ICE and therefore was not obligated to get prior written permission from the Undersecretary for Border and Transportation Security or from his U. S. Probation Officer. Additionally, the Defendant argues that he did not contact his U. S. Probation Officer within 72 hours of being taken into immigration custody since he was of the understanding that the Border Patrol officers had contacted his Probation Officer on his behalf. It appears to the Court that the government concedes that the Defendant may not have had the ability to make a phone call to his U. S. Probation Officer while he was in immigration custody and that his U. S. Probation Officer was, in fact, notified by the immigration authorities who had taken the Defendant into custody after towing his vessel back to the United States.

20. The Defendant's argument is essentially that the removal order entered in November of 2010 by Judge Nugent was never actually executed and the Defendant was never physically removed from the United States pursuant to that order since he is a Cuban National. Rather, the Defendant was permitted to remain in the United States subject to the removal order under the terms of the Order of Supervision, Defendant's Exhibit No. 1.

21. The Defendant further argues that since he had not been removed, he could not commit an illegal re-entry of a previously removed alien as set forth in Violation Number

8

5 of the Amended Petition. Additionally, the Defendant argues that he had no obligation to contact any U. S. authorities since he did not believe he was illegally re-entering the United States and that his Order of Supervision issued in June of 2011 by ICE did not require him to do so.

22. This Court understands the Defendant's arguments in this regard, but fails to see their applicability in this situation. First, there was a valid removal order in place as of November 30, 2010 in respect to this Defendant. That Order of Removal was subsequent to the Defendant's felony conviction in this case. Prior to that time, the Defendant was a permanent resident alien, living in the United States as a Cuban National. His conviction in this case then started the immigration proceedings against him.

23. The Defendant admits that he left the United States on or before November 5, 2012 and traveled to the Bahamas. This Court accepted the Defendant's admission to Violation Number 1 as set forth in the Amended Petition subsequent to the evidentiary hearing. This Court will relate the Defendant's admissions separately later herein. Therefore, the Defendant voluntarily removed himself from the United States, traveled to the Bahamas, and was monitored by Customs and Border Patrol aircraft heading back into the United States. The only impediment to the Defendant making it back to the United States was the breaking down of his vessel some 23 miles east of Palm Beach County. Where there is a valid removal order in place and the alien subject of that removal order then departs the United States, then the alien is ultimately outside of the country with an enforceable order requiring that he have exited and when both have occurred the person is considered to have been removed in pursuance of law. See United States v. Ramirez-Carcamo, 559 F.3d 384 (5th Cir. 2009).

24. The Ramirez-Carcamo decision has also been cited by the Seventh Circuit Court of Appeals in United States v. Sanchez, 604 F.3d 356 (7th Circ. 2010). In Sanchez, the Seventh Circuit referred to Ramirez-Carcamo and held that under our immigration laws, even aliens who elect to leave the United States to go anyplace before their removal orders have been fully implemented are considered to have been deported or removed in pursuance of law.

25. In this case, there was a valid removal order in place although the Defendant could not have physically been deported yet due to the fact that he is a Cuban National. The Defendant admits that he traveled to the Bahamas and thereby physically removed himself from the United States while that valid removal order was still in effect. As a result, the Defendant attempting to re-enter the United States was attempting to do so in violation of Title 8, United States Code, Section 1326, as set forth in Violation Number 5 of the Amended Petition in that he had voluntarily removed himself from the United States after a valid removal order was in effect and was seeking to come back into the United States in violation of that valid removal order.

26. Judge Moore's Judgment and Conviction, Government's Exhibit No. 2, specifically directs that if removed, the Defendant shall not re-enter the United States without written permission of the Undersecretary for Border and Transportation Security and shall report to the nearest U. S. Probation Office within 72 hours of his arrival back in the United States.

27. By operation of law, Judge Moore's special conditions of supervision set forth within his Judgment and Conviction required the Defendant to contact the U. S. Probation Office and the appropriate United States governmental agencies as set forth in Violation

Number 6 since the Defendant had voluntarily removed himself from the United States while the valid Order of Removal entered by Judge Nugent was in effect. Based upon the case law cited by this Court previously herein, the Defendant's voluntary act of leaving the United States acts as a physical removal while Judge Nugent's Order of Removal was in effect. As a result, the Defendant did commit Violation Number 5 by attempting to re-enter the United States after having been removed by his voluntary action. Further, the Defendant is found to have committed Violation Number 6 in that he has not complied with the special conditions of supervision set forth in Judge Moore's Judgment and Conviction subsequent to any removal by the Defendant. Once again, this Court finds that the Defendant's voluntary act of leaving the United States as he admits in respect to Violation Number 1, constitutes a removal.

## Defendant's Admissions to Violations Numbers 1, 3 and 4 of the Amended Petition

28. After consultation with his attorney, the Defendant announced to this Court that he wished to admit Violations Numbers 1, 3 and 4 as set forth in the Amended Petition. This Court conducted a plea colloquy in respect to those violations only subsequent to conclusion of the final evidentiary hearing and questioned the Defendant to make certain that he understood his rights in regards to an evidentiary hearing in respect to Violations Numbers 1, 3 and 4. The Defendant acknowledged that he understood his rights in that regard. At the conclusion of the plea colloquy the Defendant specifically entered his admissions to Violations Numbers 1, 3 and 4 of the Amended Petition.

11

**ACCORDINGLY,** this Court recommends to the District Court that the Defendant be found to have violated his supervised release in respect to Violations Numbers 1, 3 and 4 based upon his admissions to those violations; that he be found to have violated his supervised release in respect to Violations Numbers 5 and 6 based upon the preponderance of the evidence received by this Court at the final evidentiary hearing; and that Violation Number 2 be dismissed upon the motion of the government. Further, the District Court shall set a sentencing hearing at its earliest convenience for final disposition of this matter after it has entered an Order in respect to this Report and Recommendation.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable K. Michael Moore, the United States District Judge assigned to this case. Pursuant to Federal Rules of Criminal Procedure, Rule 59(b)(2), failure to file objections timely waives a party's right to review and bars the parties from attacking on appeal any legal rulings and factual findings contained herein.

**DONE AND SUBMITTED** this 28th day of March, 2013, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. K. Michael Moore
AUSA Carmen M. Lineberger
AFPD Fletcher Peacock
Pretrial Services